FILED
IN OPEN COURT

FEB 14 2013

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 1:13-cr-19 |
| ) | |
| GENE QUARLES, ) | |
| ) | |
| Defendant. ) | |

**STATEMENT OF FACTS**

The parties stipulate that the allegations in the Criminal Information and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt with competent and admissible evidence:

**BACKGROUND**

1. From in or about April 2010 to in our about June 2012, in the Eastern District of Virginia and elsewhere, Defendant, GENE QUARLES, a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally, in return for being influenced in the performance of any official act; that is QUARLES did agree to accept cash payments from H.E., A.E. and other employees on behalf of AH Computer Consulting (AHCC) in return for being influenced in the performance of a pattern of official acts while employed at the United States Postal Service (USPS) in Washington, D.C., in violation of Title 18, United States Code, Section 201(b)(2).

2. QUARLES has worked for the United States Postal Service (USPS) since 2007 and has held the following titles: marketing specialist, business programs specialist, and purchasing and supply management specialist. As a purchasing specialist, including the time period relevant to

1

his receipt of bribes, QUARLES oversaw, evaluated, and managed USPS contracts relating to Business Mail Entry and Payment Technologies.

3. AH Computer Consulting (AHCC) is an international information technology consulting firm that has done work for the USPS since approximately 2000. Since 2006, the USPS paid AHCC approximately $31 million for work performed on multiple contracts. H.E. and A.E. own AHCC.

### QUARLES' RECEIPT OF BRIBES FROM H.E., A.E., AND OTHER AHCC EMPLOYEES IN EXCHANGE FOR USPS CONTRACTING PREFERENCES

4. In 2010, QUARLES was directly involved with awarding two USPS contracts to AHCC:

   a. The first contract, 1BITSV-10-B-0004, was a time and materials contract pertaining to Business Mail Acceptance. The term of the contract was March 4, 2010 through September 30, 2011. This contract was awarded based on a non-compete justification. QUARLES was the Contracting Officer Representative (COR) on this contract. As COR, QUARLES was responsible for helping to draft the non-compete justification and statement of work for this contract and for certifying any invoices from AHCC associated with this contract. Agency records indicate that QUARLES recommended to his manager that AHCC be awarded this contract. AHCC was paid approximately $2.1 million for work performed on this contract.

   b. The second contract, 2APSER-10-B-0035, was a fixed priced contract regarding business process reengineering analysis across the business mail entry channel. The term of the contract was from July 1, 2010 through January 5, 2012. AHCC was paid approximately $3.9 million for work performed on this contract During the bidding for this contract, a request for

proposal and statement of work were issued to five firms. Three of the firms submitted proposals that were evaluated by a team of U.S. Postal Service employees. The team was made up of four members, one of which was QUARLES. The team evaluated and ranked the proposals and AHCC was eventually awarded the contract. QUARLES was the COR for this contract, as well as one of the voting members on the evaluation team. QUARLES ranked AHCC 90/100 on his evaluation and gave the competing firms scores of 70 and 72.

5. In connection with his official USPS duties related to AHCC's contracts, including the contracts discussed in paragraph 4, and in return for being influenced in the performance of official acts, QUARLES received bribe payments from H.E. and A.E. Specifically, in or about April 2010, H.E. proposed to QUARLES that H.E. would pay him cash bribes in exchange for providing H.E.'s company, AHCC, with various impermissible contracting preferences and advantages. QUARLES accepted this offer. As such, from in or about April 2010 through in or about June 2012, H.E., A.E., and other AHCC employees paid QUARLES numerous cash payments (totaling at least $40,000) in exchange for impermissibly providing advantages to AHCC during the USPS contracting process.

6. For example, in return for these bribe payments, QUARLES performed the following official acts:

   a. Provided AHCC with confidential USPS contracting information, including other vendors' proposals and labor rates, so that AHCC could tailor its bids to what other potential contractors were bidding. QUARLES would typically e-mail this information to H.E. or A.E. using his personal email address in order

to avoid detection by the USPS. In so doing, QUARLES would cause interstate wire communications from the Eastern District of Virginia to Maryland, Washington, D.C., and elsewhere. QUARLES also provided paper documents and information on "thumb drives" to H.E., A.E., and AHCC employees;

b. Exercised his official authority to assist AHCC in getting paid on time by the USPS.

c. At H.E.'s request and direction, investigated (using USPS resources) whether other government contractors were receiving impermissible contracting advantages in exchange for bribes;

d. Allowed AHCC (*e.g.*, H.E. and/or A.E.) to complete surveys, evaluations, and other review materials in QUARLES' name in connection with USPS contacts—as well as contracts for other government agencies (*e.g.*, the Department of Agriculture)—in order for AHCC to obtain additional government contracts;

e. Gave AHCC high ratings in his evaluations of AHCC's contract proposals, as well as positive recommendations, all aimed at enabling AHCC to receive USPS contracts;

7. In return for these and other official acts, H.E., A.E., and other AHCC employees would make regular cash payments to QUARLES. These payments were typically made bi-weekly for $1,000 to $5,000, although he was only paid two $5,000 installments. QUARLES also received $500 in cash from AHCC in June 2012. For example, these regular bribe payments include one in or about September 2011, during which an AHCC employee passed a brown bag to

QUARLES containing approximately $3,500 in cash. This transaction took place in the parking lot of a Best Buy electronics store in Rockville, Maryland.

8. QUARLES used the bribe payments to pay for bills, rent, and other living expenses.

9. In or about May 2012, moreover, H.E. offered QUARLES $15,000 to assist in finding and training an Internal Revenue Service employee to assist AHCC with a similar bribery relationship. QUARLES discussed this offer with H.E. by phone and received the following email from H.E.'s AHCC e-mail account on May 28, 2012:

> "There is a huge Opportunity at IRS and we could get a contract in june, but, that contracting officer seems he needs someone like you with your expertise and knowledge about our capabilities and our past performance to convenience him. If you are up to this challenge, if you succeed, we would pay you 15,000 usd as a fee for your effort + bonus of contract value exceeded 600,000."

10. At all times in which he was receiving bribes from H.E., A.E., and other AHCC employees, Quarles knew what he was doing was illegal. Indeed, A.E. instructed QUARLES that if he were ever questioned by law enforcement about the cash payments, QUARLES should tell law enforcement that they were donations to QUARLES' church. After AHCC's offices were searched pursuant to a valid search warrant in July 2012, H.E. reiterated this instruction and told QUARLES by phone that he should explain to law enforcement that any cash payments were donations to QUARLES' church. Prior to this telephone conversation, H.E. had instructed QUARLES not to discuss his bribe payments with anyone.

11. The acts taken by the defendant in furtherance of the offense charged in this case, including the acts described above, were done willfully, knowingly, and corruptly with the specific intent to violate the law and were done not as a result of accident, mistake or other innocent reason.

12. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offense charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By: *[signature]*
Chad I. Golder
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3980
chad.i.golder@usdoj.gov

Date: 2/14, 2013

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, GENE R. QUARLES and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 8/28/12

*[signature]*
GENE R. QUARLES,
Defendant


I am GENE R. QUARLES' attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 8/28/12

*[signature]*
Denise Tassi, Esq.
Attorney for GENE R. QUARLES

7